UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JAYME L.,[1]

    Plaintiff,

                  Case No. 3:21-cv-00548-YY

  v.

                  OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

    Defendant.


YOU, Magistrate Judge.

    Plaintiff Jayme L. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33.  This court has

jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g).  For

the reasons set forth below, that decision is REVERSED and REMANDED for further

proceedings consistent with this opinion.

## PROCEDURAL HISTORY

    Plaintiff protectively filed for Title II disability benefits on April 24, 2017, alleging

disability beginning on June 10, 2016.  Her application was initially denied on June 28, 2017,

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

and upon reconsideration on October 17, 2017.  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which took place on March 14, 2019.  An ALJ issued an

unfavorable decision on April 2, 2019.  The Appeals Council remanded the matter on March 26,

2020.  On remand, a hearing was held on July 28, 2020, and an ALJ issued an unfavorable

decision on August 24, 2020.  The Appeals Council denied plaintiff's request for review on

February 19, 2021.  Therefore, the ALJ's August 24, 2020 decision is the Commissioner's final

decision and subject to review by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by

isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-

10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This

court may not substitute its judgment for that of the Commissioner when the evidence can

reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746

(9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational

interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920;

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180

F.3d 1094, 1098-99 (9th Cir. 1999)).

 At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since

her alleged onset date of June 10, 2016. At step two, the ALJ determined plaintiff suffered from

the following severe impairments: spinal cord disorder, migraines, hemolytic anemia, affective

disorder, anxiety disorder, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

 At step three, the ALJ found plaintiff did not have an impairment or combination of

impairments that met or medically equaled a listed impairment. The ALJ next assessed

plaintiff's residual functional capacity ("RFC") and determined she could "to perform light work

as defined in 20 CFR 404.1567(b) except can never climb ropes, ladders, or scaffolds;

occasionally perform all other postural abilities; occasionally reach overhead bilaterally; have no

exposure to heights, hazards, or heavy equipment; and can follow simple instructions and have

occasional public contact."

 At step four, the ALJ found plaintiff was unable to perform any past relevant work. At

step five, the ALJ determined that, based on plaintiff's age, education, work experience, and

RFC, there were jobs that existed in the national economy that she would perform, including

household cleaner, agricultural produce sorter, and cafeteria attendant. Thus, the ALJ concluded

plaintiff was not disabled.

**DISCUSSION**

Plaintiff contends that ALJ erred at steps three and five and in rejecting her testimony and evaluating the medical opinions.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence.  20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-

(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, when coupled with another permissible reason, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ observed that plaintiff alleged she "cannot work because of significant pain, weakness, fatigue, loss of function, and balance problems due to her spinal cord disorder, as well as migraine headaches and severe symptoms from anxiety and depression that diminish

her cognitive and social functioning." Tr. 23.  The ALJ cited to plaintiff's function report in which she claimed she has "difficulty with lifting, squatting, bending, standing, reaching, kneeling, talking, stair climbing, memory, concentration, using her hands, and getting along with others."  *Id.*  The ALJ then cited extensively to the medical record and concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence."  Tr. 23.

Plaintiff contends the ALJ failed to provide any "true analysis and simply provided a summary of the medical evidence."  Pl. Br. 15.  But the ALJ sufficiently explained why plaintiff's alleged symptoms were inconsistent with the portions of the record he cited.  While too numerous to mention in their entirety, some of the records cited to by the ALJ include:

- MRI records from 2015 and 2016 showing no change in condition and that were otherwise unremarkable.
- Medical records from December 2016 and March 2017 showing plaintiff was in no acute distress with 5/5 strength in all major muscle groups in both upper and lower extremities, stable gait, and intact sensation and cranial nerves.
- A good prognosis following Chiari decompression surgery in March 2017, with no barriers to rehabilitation.
- Physical therapy records from the relevant period showing improvement and a good prognosis for increased neck strength, range of motion, and stability.
- Chart notes from May 2017 that showed plaintiff was doing "extremely well" and her preoperative symptoms had completely resolved.
- Records from a consultative examination in September 2017 showing that, while plaintiff experienced some ongoing limitations, they did not cause limitations in excess of those included in the RFC.  "[D]espite some shoulder and cervical spine tenderness as well as some diminished range of motion, the claimant was in no acute distress and exhibited 5/5 strength, no muscle weakness or atrophy, intact grasp, pinch, manipulation, and fine coordination, normal motor and sensory functioning, intact cranial nerves, normal and equal sensation and reflexes, normal proprioception, and negative Romberg test."
- Other records from 2016, 2017, and 2018 showing full range of motion in her neck and no tenderness in her spine.

As evidenced by just this sampling, the ALJ reasonably concluded that plaintiffs' claims are inconsistent with the medical record and this finding is supported by substantial evidence.

However, as previously noted, inconsistency with the medical record cannot be the sole basis to discount plaintiff's testimony. The ALJ also rejected plaintiff's testimony based on her daily activities, which plaintiff claims was in error. The ALJ listed a number of plaintiff's activities, collected from her statements, her function report, a statement by her husband, and her medical records, and concluded they showed plaintiff "regularly engages in activities consistent with or in excess of the limitations found in the residual functional capacity." Tr. 26. Also, the ALJ observed that some of the activities show plaintiff has "some level of head movement." *Id.*

In evaluating a claimant's testimony, an ALJ may consider inconsistences such as "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (quoting *Lingenfelter,* 504 F.3d at 1040). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, . . . the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Id.* (simplified). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.*

Here, the medical record shows plaintiff had a history of migraine headaches, sometimes characterized as "severe," dating back to when she was a child. Tr. 465, 965, 1351 (migraines since 1976; "Always have had them."). She also had a history of memory issues and "word-finding" problems beginning in at least 2010. Tr. 465, 479. In 2016, plaintiff described that her headaches had worsened over the past several years. Tr. 1170. At her hearing, plaintiff testified that when she suffers a migraine, she cannot function at all and it is almost like a mini-stroke in that it feels like something is stabbing her in the eye and she cannot open it. Tr. 81. In addition

to migraines, plaintiff complained of left suboccipital and neck pain radiating predominantly down the left side of her head, weakness in her hands, pain and tingling along the top of her trapezius and shoulder region bilaterally, and balance problems.  Tr. 1170.  Plaintiff was diagnosed with Chiari I malformation and underwent decompression surgery in 2017.  Tr. 675. Before surgery, plaintiff was advised that a number of her symptoms (including weakness in her hands, numbness and tingling in her shoulders, and balance problems) could be attributed to the Chiari malformation, but it was possible that the migraines were unrelated and she could continue to have them after surgery.  Tr. 1172.

Plaintiff does not appear to claim that she has a totally debilitating impairment; however, she does say her symptoms are unpredictable and could flare up at any time.  *See* Tr. 346 (Function Report).  Plaintiff also describes that lifting and standing for long periods of time are difficult, she gets fatigued easily, she is dizzy frequently, and she needs multiple breaks to complete tasks.  Although plaintiff goes out of the house, she can only walk a block or two and then has to rest for 30 minutes.  In fact, if plaintiff is active for multiple hours, she is "useless for at least one day."  Sometimes plaintiff sleeps all of the time, and on some days, she skips meals because she cannot move.  Plaintiff's activities are limited to things such as walking her daughter to the bus stop, doing two loads of laundry every other day, loading dishes (but not unloading them because it is difficult to reach overhead), watering plants, letting the dog out, going to church two times a month, and going to her daughter's sports games.  Plaintiff goes shopping but cannot carry heavy objects.  Plaintiff is unable to shower daily, and had to cut off her long hair because she was no longer able to care for it.  She is able to pay bills, but needs reminders.  She also needs reminders to take her medication.  *See also* Tr. 1227 (describing that she had a rough

month, was sleeping more than usual, and her friends were calling to check on her because they had not seen or heard from her).

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016 (citing *Smolen,* 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").  "Recognizing that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, [the Ninth Circuit has] held that only if her level of activity were inconsistent with a claimant's claimed limitations would these activities have any bearing on her credibility."  *Id.* (simplified) (quoting *Reddick,* 157 F.3d at 722 (citations omitted); *see also Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir.2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)).

Here, as in *Garrison*, plaintiff's "daily activities, as she described them in her testimony,

were consistent with her statements about the impairments caused by her pain." 759 F.3d at

1016. In *Garrison*, the court held that the plaintiff's "ability to talk on the phone, prepare meals

once or twice a day, occasionally clean one's room, and, with significant assistance, care for

one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying

in bed most of the day, is consistent with the pain that Garrison described in her testimony." *Id.*

"It is also consistent with an inability to function in a workplace environment." *Id.* The same

can be said here. The *Garrison* court found that, "[a]ccordingly, the supposed inconsistencies

between [plaintiff's] daily activities and her testimony do not satisfy the requirement of a clear,

convincing, and specific reason to discredit [plaintiff's] testimony regarding her pain-related

impairments." *Id.*

     This case also bears striking similarity to *Nicole B. v. Saul*, No. 6:19-CV-1694-SI, 2021

WL 1181178 (D. Or. Mar. 29, 2021), in which the court held:

> The crux of Plaintiff's symptom testimony is that she becomes debilitated by
> unpredictable migraines and fatigue, and that she is unable to maintain
> substantial, gainful employment as a result. These symptoms are not contradicted
> by one-off household management tasks or hobbies. Plaintiff has not testified that
> she is unable to push enough weight to operate a lawn mower, that she is unable
> to walk, that she is unable to carry out the lifting required to change her cat's litter
> or do laundry. None of these activities, done on Plaintiff's own schedule and
> according to her degree of fatigue or migraine, contradict her subjective
> symptoms. Plaintiff also has testified that she receives help taking care of her
> child as-needed. The ALJ did not provide any rationale connecting these activities
> to any symptom or the degree of any symptom alleged by Plaintiff. The ALJ did
> not provide legally sufficient reasons for rejecting Plaintiff's subjective symptom
> testimony.

*Id.* at *6. For similar reasons here, the ALJ erroneously rejected plaintiff's testimony based on

her activities of daily living. Because inconsistency with the medical record alone is an

insufficient basis upon which to reject plaintiff's testimony, the ALJ erred.

**II.     Step Three**

A claimant bears the burden of proof at step three.  *Bowen v. Yuckert*, 482 U.S. 137, 146

n.5 (1987).  The mere diagnosis of an impairment is not sufficient to sustain a finding of

disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  "It must also have

the *findings* shown in the Listing of that impairment."  *Id.* (citation omitted) (emphasis in

original).  "An ALJ must evaluate the relevant evidence before concluding that a claimant's

impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to

support a conclusion that a claimant's impairment does not do so."  *Lewis v. Apfel*, 236 F.3d 503,

512 (9th Cir. 2001).

Plaintiff claims the ALJ erred at step three in finding that her migraines did not meet a

listing.  The ALJ observed "[t]here is no specific listing for migraine headaches."  The ALJ

further "reviewed section 11.00 (Neurological), paying special attention to section 11.02

(Epilepsy)" and found plaintiff's "headaches do not meet or equal any section of the listings."

Plaintiff argues the ALJ's reasoning is merely "relegated to one line" and contains "no analysis

occurred to evaluation the criteria of the listing," making the analysis "wholly unclear to a

reviewing court."  Plaintiff also contends that "the record at least suggests that [she] equals

listing 11.02."

Social Security Ruling 19-4p provides that Listing 11.02 is the most closely analogous

listed impairment for a medically determinable impairment of a primary headache disorder,

which includes migraines.  The ruling describes migraines as follows:

> *Migraines* are vascular headaches involving throbbing and pulsating pain caused
> by the activation of nerve fibers that reside within the wall of brain blood vessels
> traveling within the meninges (the three membranes covering the brain and spinal
> cord). There are two major types of migraine: *Migraine with aura* and *migraine
> without aura*. Migraine with aura is accompanied by visual, sensory, or other
> central nervous system symptoms. Migraine without aura is accompanied by

nausea, vomiting, or photophobia (light sensitivity) and phonophobia (sound
sensitivity). Migraine without aura is the most common form of migraine.

SSR 19-4p.

The ruling further states, "While uncommon, a person with a primary headache disorder

may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D

for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing."

Listing 11.02B and D contain the following criteria:

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at
least 3 consecutive months (see 11.00H4) despite adherence to prescribed
treatment (see 11.00C).
. . .

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks
for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed
treatment (see 11.00C); and a marked limitation in one of the following:
1. Physical functioning (see 11.00G3a); or
2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
3. Interacting with others (see 11.00G3b(ii)); or
4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
5. Adapting or managing oneself (see 11.00G3b(iv)).

Ruling 19-4p further explains the paragraph B and D factors as follows:

Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once
a week for at least 3 consecutive months despite adherence to prescribed
treatment. To evaluate whether a primary headache disorder is equal in severity
and duration to the criteria in 11.02B, we consider: a detailed description from an
[acceptable medical source] of a typical headache event, including all associated
phenomena (for example, premonitory symptoms, aura, duration, intensity, and
accompanying symptoms); the frequency of headache events; adherence to
prescribed treatment; side effects of treatment (for example, many medications
used for treating a primary headache disorder can produce drowsiness, confusion,
or inattention); and limitations in functioning that may be associated with the
primary headache disorder or effects of its treatment, such as interference with
activity during the day (for example, the need for a darkened and quiet room,
having to lie down without moving, a sleep disturbance that affects daytime
activities, or other related needs and limitations).

Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once
every 2 weeks for at least 3 consecutive months despite adherence to prescribed

treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p.

Here, while the ALJ did not discuss plaintiff's migraines at length in the step three analysis, the ALJ discussed plaintiff's migraines in the RFC analysis.  The fact the ALJ discussed plaintiff's migraines in a different part of the decision does not, in and of itself, constitute error.  Where the ALJ "sufficiently discussed and evaluated all relevant evidence before concluding that Plaintiff did not meet or equal any listing, . . . [t]he fact that he did so for the most part elsewhere in his decision rather than in his step three finding is immaterial." *Spurlock v. Colvin*, No. EDCV 14-01521-JEM, 2015 WL 1735196, at *4 (C.D. Cal. Apr. 16, 2015) (citing *Lewis,* 236 F.3d at 513 (observing case law "simply requires an ALJ to discuss and evaluate evidence that supports his or her conclusions; it does not specify that the ALJ must do so under the heading 'Findings' "); *Harris v. Astrue,* No. CV 08-0831- JSW, 2009 WL 801347, at *7 (N.D. Cal. March 25, 2009) (holding discussion and evaluation of evidence at step four supported the ALJ's step three conclusion that impairments did not meet or equal Listing 1.04; *"Lewis* does not require that support for the ALJ's conclusion be placed in a specific section of the Report").

Citing Listing 11.00H1b, the Commissioner argues "[t]here is no evidence in the record that Plaintiff's migraines caused alteration of consciousness or impaired her abilities to stand, walk, or use her arms."  Def. Br. 19.  Listing 11.00H1b defines dyscognitive seizures as follows:

> Dyscognitive seizures are characterized by alteration of consciousness without
> convulsions or loss of muscle control. During the seizure, blank staring, change of
> facial expression, and automatisms (such as lip smacking, chewing or swallowing,
> or repetitive simple actions, such as gestures or verbal utterances) may occur.
> During its course, a dyscognitive seizure may progress into a generalized tonic-
> clonic seizure (see 11.00H1a).

But "[t]his is a misguided approach in this setting." *Jeffrey N. v. Comm'r of Soc. Sec.*, No. 1:19-

CV-00433-REP, 2021 WL 4497144, at *7 (D. Idaho Sept. 30, 2021). "Otherwise, migraine

headaches *themselves* would never meet or equal a listed impairment." *Id.* (emphasis in

original).

The Commissioner also argues "the ALJ adequately discussed and evaluated evidence

supporting her conclusion that Plaintiff's impairments did not meet or equal Listing 11.02." As

noted, the ALJ discussed plaintiff's migraines in the context of formulating the RFC, finding that

a "review of the record shows that although [plaintiff] continues to report headaches and

headache symptoms, her providers found that she responded well to her surgery and physical

therapy, both of which significantly reduced her symptoms." Tr. 26-27. But as discussed above,

the ALJ failed to provide clear and convincing reasons to reject plaintiff's subjective symptoms.

On remand, the ALJ will have the opportunity to reassess plaintiff's subjective symptom

testimony, as well as the step three analysis with respect to plaintiff's migraines and other issues

affected by a reassessment of plaintiff's subjective symptom complaints. Given such a

reassessment is required, it is unnecessary and premature to reach the remaining claims of error

raised by plaintiff.

## III.    Credit-as-True Analysis

When a court determines the Commissioner erred in some respect in making a decision to

deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or

without remanding the cause for a rehearing." *Treichler v. Commissioner of Social Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ improperly rejected plaintiff's subjective symptom testimony. However, at this juncture, the record as a whole creates serious doubt as to whether plaintiff is disabled. *See, e.g.*, Tr. 123 (Dr. Johnson's opinion). Therefore, this case must be remanded for further proceedings rather than the award of benefits.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED January 12, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
